IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff,

v.                                                            No. 12-cv-1330 WJ/SMV
                                                                            10-cr-2603 WJ

VERNON EARL COLEMAN,

      Defendant.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

THIS MATTER is before the Court on Defendant's Motion Under 28 U.S.C. § 2255 . . . [Doc. 1], filed on December 31, 2012.  Plaintiff (hereinafter "the Government") filed a response [Doc. 10] on March 7, 2013.  Defendant filed a reply [Doc. 11] on March 21, 2013.  United States District Judge William P. Johnson referred this matter to the undersigned for proposed findings and a recommended disposition.  Order of Reference . . . [Doc. 3].  Having meticulously reviewed the parties' submissions, the relevant law, and the records in this case and Defendant's underlying criminal case, I recommend that the motion be **DENIED** and that Case No. 12-cv-1330 WJ/SMV be **DISMISSED with prejudice.**

### Factual and Procedural Background

On April 2, 2010, Defendant drove his semi-tractor trailer rig into a temporary Port of Entry (POE) near Lordsburg, New Mexico.  [Doc. 10] at 4.  A New Mexico Motor Transportation Division (MTD) Officer inspected his paperwork, performed a brief "cargo check," walked around the truck, inspected of the cab, and told him he was free to go.  *Id.*; *see*

Transcript of [Suppression Hearing] [Doc. 10-1] at 91.  Defendant subsequently signed a consent form authorizing the officer to search his vehicle.  [Doc. 10] at 5.  Pursuant to that authorization, the MTD officer performed a more thorough search of Defendant's trailer and discovered 759 pounds of marijuana in several duffel bags.  *Id*.  On September 14, 2010, a grand jury in the District of New Mexico returned a two-count indictment against Defendant.  CR Doc. 12.[1]  Count 1 accused Defendant of conspiring to possess with the intent to distribute more than 100 kilograms of marijuana in violation of 21 U.S.C. § 846.  *Id.*   Count 2 accused Defendant of possessing more than 100 kilograms of marijuana with the intent to distribute it in violation of 21 U.S.C. §§ 841(a)(1),  (b)(1)(B) and 18 U.S.C. § 2.

On October 6, 2010, Defendant's counsel filed a Motion to Suppress Evidence and Statements (hereinafter, the "motion to suppress").  CR Doc. 17.  He filed an amended motion to suppress the following day and then an amendment to the amended motion on March 3, 2011.  CR Docs. 18, 36.  On February 17, 2011, the district court conducted a hearing on the motion.  Transcript of [Suppression Hearing] [Doc. 10-1].   On April 6, 2011, the district court denied the motion in a memorandum opinion and order.  CR Doc. 48.

On April 13, 2011, Defendant conditionally pled guilty to Count 2 of the indictment.  CR Doc. 64.[2]  He reserved the right to appeal the district court's denial of his motion to suppress.  CR Doc. 75.   On July 26, 2011, the district court conducted a sentencing hearing and remanded Defendant to the custody of the Bureau of Prisons to be imprisoned for a total term of 164 months. CR Doc. 74.  On August 12, 2011, the district court entered a judgment memorializing the sentence.   CR Doc. 76.   Defendant appealed the district court's denial of his motion to

---

[1] References that begin with "CR" are to the underlying criminal case, 10-cr-2603 WJ.
[2] The district court dismissed Count 1 of the indictment on motion of the United States.  CR Doc. 54.

suppress to the Tenth Circuit Court of Appeals. *See* CR Doc. 78. The Tenth Circuit upheld the district court's ruling. *United States v. Coleman*, 483 F.App'x 419, 421 (10th Cir. 2012). Defendant then petitioned for certiorari before the United State Supreme Court. CR. Doc. 93. That petition was denied. *Coleman v. United States*, 133 S. Ct. 360 (2012).

Defendant then filed this motion pursuant to 28 U.S.C. § 2255. [Docs. 1, 2]. He raises two grounds in support of the motion. In Ground One, he claims that his trial counsel was constitutionally ineffective in not moving to suppress his "illegal detention." [Doc. 2] at 3–6. Specifically, he contends that counsel's representation was ineffective because he failed to argue in the motion to suppress that Defendant did not consent to the search of the trailer, and that the MTD officer lacked probable cause to perform the search without his consent. *Id*. In Ground Two, he argues that the district court abused its discretion by not granting his motion to suppress. *Id.* at 6–7.

## Analysis

### I.     Ground One:  Ineffective Assistance of Counsel

**A.  The Standard**

The test for making a claim of constitutionally ineffective assistance of counsel was set forth by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a defendant must satisfy a two-part test:

> First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair [proceeding.]

3

466 U.S. at 687.  The appropriate standard for attorney performance is that of reasonably effective assistance; the defendant must demonstrate that counsel's representation, considering all the circumstances, fell below an objective standard of reasonableness based on prevailing professional norms.  *See id.* at 687–88.  For counsel's performance to be constitutionally ineffective, it must have been "completely unreasonable, not merely wrong."  *Hoxsie v. Kerby,* 108 F.3d 1239, 1246 (10th Cir. 1997) (quoting *Hatch v. Oklahoma*, 58 F.3d 1447, 1459 (10th Cir. 1995)).  In evaluating an attorney's performance, the court must be highly deferential:

> A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.

*Strickland*, 466 U.S. at 689 (internal quotation marks omitted).  In applying this test, the Court must give considerable deference to an attorney's strategic decisions and "recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  *Id*. at 690.  Finally, "[n]either hindsight nor success is the measure" of whether counsel was effective, and "effective" is not necessarily synonymous with victorious or flawless.  *Dever v . Kan. State Penitentiary*, 36 F. 3d. 1531, 1537 (10th Cir. 1994).  Rather, to be considered *ineffective* assistance of counsel, "the representation must have been such as to make the [proceeding] a mockery, sham, or farce, or resulted in the deprivation of constitutional rights."  *Id*. (citing *Lorraine v. United States*, 444 F.2d 1, 2 (10th Cir. 1971)).

4

A defendant asserting ineffective assistance of counsel must also affirmatively prove prejudice. *Strickland*, 466 U.S. at 693. "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

**B. Counsel's performance was not constitutionally ineffective.**

Defendant's claim of ineffective assistance of counsel arises from the district court's denial of his motion to suppress. The motion was filed by Defendant's court-appointed counsel, Dennis Candelaria.[4] The sole ground raised in the motion to suppress was that Defendant, an African-American, was the victim of selective enforcement of the law in violation of the Equal Protection Clause of the Fifth Amendment. *See* CR. Docs. 17, 18, 36. In the current § 2255 motion, Defendant asserts that Mr. Candelaria was constitutionally ineffective "for neglecting to challenge the legality of Defendant[']s illegal detention and arrest," i.e., for failing to challenge the validity of Defendant's consent and for failing to argue lack of probable cause. Memorandum of Law in Support of Petition . . . [Doc. 2] at 3–6.

As noted *supra*, the district court held a hearing on the motion to suppress. [Doc. 10-1]. The Government called three witnesses: Officer Christopher Alvarez, the MTD officer who obtained the consent form and performed the search; David Gomez, an MTD Transportation Inspector who was present during Defendant's inspection and arrest; and Thomas Mora, the New Mexico State Police officer who made the arrest. *Id.* Defense counsel cross-examined all three witnesses. *Id.* Defendant was the only witness called for the defense. *Id.* at 84–93. The

---

[4] Mr. Candelaria is an experienced and well-respected member of the Federal Public Defender's Office.

testimony of the four witnesses is accurately summarized at pages 4–7 of the Government's Response and need not be repeated here. *Compare* [Doc. 10] at 4–7, *with* Transcript of [Suppression Hearing] [Doc. 10-1]. It is sufficient to note that the Government's witnesses testified that Defendant freely and voluntarily consented to the search of his trailer and its contents. [Doc. 10-1] at 18−74. Defendant conceded that he signed the consent-to-search form after the MTD officer had told him he was "free to go." *Id.* at 91, 92. However, he testified that when he signed the form he thought that it merely gave the MTD officer "permission to run the dog around [the truck]," not to search the trailer and its contents. *See* [Doc. 10-1] at 92.

> Q. What happened?
>
> A. [Officer Alvarez] just gave me the paperwork and said — and the seal, said, "You're free to go," and then he stopped me again. He asked me, he said, "Well, will you give me consent to run the dog around the truck?"
>
> I said, "Yeah. I have no problem with it."
>
> "Okay. Well, I need you to sign this consent form," and that's when I signed the consent form.
>
> Q. Okay. And did you actually read the consent form, or was it you were just going on his representation that signing that consent form was just permission to run the dog around?
>
> A. Yes, that's what I was told.

*Id.* This is the basis for Defendant's claim that the search of the trailer was not consensual. [Doc. 1] at 3-6.

Mr. Candelaria provided an affidavit, which the Government attached to its Response to Defendant's § 2255 motion. *See* Affidavit of Dennis J. Candelaria, Esq., [Doc. 10-2]. In the affidavit, Mr. Candelaria explains why he chose not to pursue Defendant's theory that the search

was not consensual, but decided instead to argue that the arrest was the fruit of an illegal detention:

> 3. When reviewing the government's evidence, I felt that Mr. Coleman's only not frivolous motion to suppress was based on an Equal Protection Clause argument of selective enforcement. During the course of my representation we litigated that issue and negotiated a plea in which Mr. Coleman preserved his right to appeal the trail [sic] Court's denial of that motion. . . .
>
> 4. I discussed with Mr. Coleman the issue of whether or not he was legally free to leave when the officer returned his documents. I told him that once the officer gave back the documents and told him that he was free to leave, the "encounter" then became consensual. At that point, the officer needed a warrant, probable cause, or consent to search the trailer because the officer was no longer doing his official duty at the port of entry. Once Mr. Coleman consented to allowing the officer to go back into the trailer, he had no 4th Amendment issue. And in the alternative, the officer probably had probable cause to go back into the trailer because the duffle bags were not in conformity with the bill of lading. I remember telling him that we would never get to litigate the second issue because he consented. Additionally, I told him that he didn't try to walk away or close the trailer doors [or take] any action that would indicate he was trying to leave. . . . For these reasons I chose to pursue suppression of evidence as I have set out above [i.e., based on selective enforcement].

Candelaria Affidavit, [Doc. 10-2] at 1-2.

Having meticulously reviewed the parties' submissions, the pertinent case law, Mr. Candelaria's affidavit, and the record from the underlying criminal case, including the transcript of the suppression hearing, I find that Mr. Candelaria's affidavit and the record of the case fully support a finding that Defendant's counsel's performance did not fall below an objective standard of reasonableness. To the contrary, it appears that Mr. Candelaria's performance surpassed a "reasonable" performance. Mr. Candelaria litigated the criminal case vigorously at the district court level and before the Tenth Circuit Court of Appeals. *See United*

*States v. Coleman*, 483 F.App'x 419 (10th Cir. 2012). He filed a petition for a writ of certiorari before the Supreme Court of the United States. *See* CR. Doc. 93. It is clear from the record that Mr. Candelaria discussed with the Defendant the defense that Defendant now claims he should have raised in the motion to suppress. It is equally clear that Mr. Candelaria chose not to pursue that defense as a reasonable trial strategy, which the Court cannot now second-guess. *See Strickland*, 466 U.S. at 689–90. Put another way, I find that Defendant has failed to overcome the strong presumption that Mr. Candelaria's assistance was effective, and that his decisions were made in the exercise of reasonable professional judgment. *See United States v. Kennedy*, 225 F. 3d 1187 1197 (10th Cir. 2000); *Dever*, 36 F.3d at 1537.

The Court need not address the second prong of the *Strickland* standard because Defendant has made an insufficient showing on the first prong. *See Strickland*, 466 U.S. at 697. Nevertheless, I find that Defendant has failed to affirmatively prove prejudice. At the suppression hearing, Officer Alvarez testified to the following:

1. When Defendant pulled into the POE, "he was real shaky, real, real, nervous," to the point that Officer Alvarez asked him if he was OK. [Doc. 10-1] at 20;

2. When Officer Alvarez asked Defendant where he was coming from, instead of stating a city or town, Defendant said he was coming from his fiancée's house. *Id.* at 21;

3. When Defendant handed his log book to Officer Alvarez, his hands were "shaking uncontrollably." *Id*. at 22;

4. Defendant's log book reflected unusual down time. *Id*. at 21–24;

5. Defendant's bill of lading indicated he was hauling a load of window blinds. *Id*. at 24. However, when Officer Alvarez performed a "cargo check," he observed several duffle bags that were not listed on the bill of lading. *Id*. at 27;

6. The seal on Defendant's trailer did not match the seal reflected on the bill of lading, suggesting that someone had been in the trailer after it was loaded and had replaced the original seal. *Id*. at 26–27.

7. Defendant signed the consent-to-search form after Officer Alvarez had observed all of the above, including the duffle bags. *Id.* at 20–27.

Even assuming that the consent form was not voluntary, Officer Alvarez had sufficient probable cause to search the trailer. *See, e.g., United States v. Gwathney*, 465 F.3d 1133, 1137, 1140 (10th Cir. 2006) (holding that MTD Officer had probable cause to search non-conforming packages observed while conducting a cargo check of a tractor trailer). I **FIND,** therefore, that Defendant has failed to show that his counsel's allegedly insufficient performance resulted in prejudice to his defense.

## II.     GROUND TWO: TRIAL COURT'S FAILURE TO SUPPRESS EVIDENCE

The second claim Defendant raises in support of his § 2255 motion is that the district court abused its discretion by denying his motion to suppress. [Doc. 1] at 4. This is the exact issue raised on appeal to the Tenth Circuit, *United States v. Coleman*, 483 F.App'x 419 (10th Cir. 2012), and in his petition for a writ of certiorari before the United States Supreme Court, *Coleman v. United States.*, 133 S. Ct. 360 (2012). Absent a change in the law of the circuit, issues previously decided on direct appeal cannot be raised in a § 2255 motion. *United States v. Warner*, 23 F.3d 287, 291 (10th Cir. 1994). Accordingly, Defendant's Ground Two is meritless.

## CONCLUSION AND RECOMMENDED DISPOSITION

For the reasons set forth herein, I respectfully recommend that Defendant's § 2255 motion [Doc. 1] be **DENIED**, and that this action be **DISMISSED WITH PREJUDICE.**

> **THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN FOURTEEN DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition, they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any written objections with the Clerk of the District Court within the 14-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

_____
**STEPHAN M. VIDMAR**
**United States Magistrate Judge**